## PRICE v. PRICE.

1. **Statute of limitations: NEW PROMISE.** A parol promise to pay a debt barred by the statute of limitations, at a future time and by a different mode of payment, does not amount to a new contract, and as such enforceable under our statute. Rev., § 2751.

2. —— Nor will a parol agreement, not based on any new or additional consideration, to extend the time of payment of a debt not already barred, take the case out of the statute.

*Appeal from Tama Circuit Court.*

THURSDAY, JULY 25.

ACTION commenced on the 16th day of March, 1871, to recover the value of seven years' service rendered defendant, from September, 1854, to September, 1861.

Defense, denial and plea of statute of limitations. Jury trial. Verdict and judgment for plaintiff. Defendant appeals. The facts are stated in the opinion.

*Stivers & Safely* for the appellant.

*C. B. Bradshaw* and *O. H. Mills* for the appellee.

DAY, J. — Upon the trial the court gave a number of lengthy instructions, to which defendant excepted, and of which he now complains. It will be more conducive to clearness and brevity to discuss and establish the general principles underlying the rights of the parties, and then to determine the agreement or non-agreement of the instructions given with the principles thus established, than to set out and consider the instructions seriatim.

The evidence on the part of plaintiff establishes the following facts: The plaintiff accompanied his brother, the defendant, to this State from Ohio, and entered his employ about September, 1854. About the time of the expiration of one years service, the defendant promised plaintiff that if he would remain in his employ another year, he would give him the east eighty acres of land which he then owned, in payment of the two years work.

At the expiration of the two years, defendant promised to pay plaintiff what his work was reasonably worth, if he would remain in his service. Plaintiff continued to work for defendant until the 22d of September, 1861, being seven years in all. He has not received the land or any other compensation. In 1865, defendant sold his land, including the eighty acres agreed to be given plaintiff, and promised to give him other land or money. In 1866, the defendant told plaintiff he would pay him in land or money, when he got a little more able. The next conference between the parties is detailed by plaintiff as follows: "We next talked at Hammond's mill; this was in the spring of 1866. He had $225 of my money borrowed from me. He paid me this, and I then asked him about my pay for the work, and he then told me to hold on, and that if I would wait on him until I got settled down and married, and needed the money, he would pay me in money every cent my work was worth, with interest; and I told him all right." Plaintiff was married September 18, 1868. The defendant in his testimony denies every thing asserted

by plaintiff; but as the jury, by their general verdict, have determined the facts in plaintiff's favor, we propose to consider the case upon the basis of the facts as represented in the plaintiff's evidence. The leading question, and, indeed, the one decisive of the case, arises upon the effect to be given to the conference between the parties, detailed by plaintiff as occurring at Hammond's mill, in the spring of 1866. Defendant claims that it amounts merely to a parol promise to pay a debt otherwise barred by the statute of limitations, and is therefore inoperative in consequence of the provisions of section 2751 of the Revision. This section is as follows: " Causes of action founded on contract are revived by an admission that the debt is unpaid, as well as by a new promise to pay the same. But such admission or new promise must be in writing, signed by the party to be charged thereby." Plaintiff, upon the other hand, contends that, at this conference, a *new* and distinct agreement was made, resting upon sufficient consideration, to pay him when he should be married, and that the statute of limitations did not begin to run until the happening of that event. If what occurred at Hammond's mill is to be construed as contended for by defendant, we see no escape from the conclusion that it does not take the case out of the operation of the statute of limitations, and that the plaintiff's claim is barred. The plaintiff's right to recover therefore must depend upon the correctness of the construction which he places upon what occurred between the parties at the time indicated. The plaintiff's claim is naturally divided into two parts: First. His demand for compensation for the first two years service, which was to be paid in land. Second. His demand for compensation for the remaining five years service. The claim for compensation for the first two years work matured when the service was performed. Then the plaintiff had a right to demand compensation, and could have commenced an action in the event of the defendant's refusal to pay.

Price v. Price.

Hence the statute of limitations then began to run against this portion of his claim. It was due then in the fall of 1856, and in the spring of 1865, when the alleged subsequent agreement was made, it was wholly barred. A mere verbal promise to pay it would be void under our statute, but the original consideration received, and the existing moral obligation to discharge the debt, is sufficient to support a new promise in writing to pay it. But it is claimed that, in the spring of 1866, a new contract was made. That it was then agreed that this two years service should be paid for in a different commodity from that originally agreed upon, to wit: *Money* instead of land, and that payment should be made at a future day, to wit: When the plaintiff should get married. And it is urged that this agreement, though verbal, is binding. Is this position sound? The evident purpose of section 2751 is to remove the inducements to perjury which would arise from an effort to revive stale debts by parol proof of promises to pay them. But if the mere substitution of time and mode of payment gives the promise the character of a new contract, and as such enforceable, though resting in parol, it is evident that the purpose of the statute would easily be defeated. Does not an allowance of the principle contended for by plaintiff, work a mere evasion of this provision of the statute? Again, if this subsequent colloquy is to be considered, not as an agreement to pay an existing debt, but as a new contract, it is difficult to see upon what consideration it is supported. It is to be remembered that the original contract is a sufficient consideration to support a promise in writing to discharge *it* — the contract before made. But we are not aware that it has ever been held that it is sufficient to support an entirely new and distinct agreement. Let us see whether, upon principle, it can be allowed that effect. A consideration is some benefit moving to the promissor, or some prejudice resulting to the promisee. What benefit in this case is extended to the

promisor? An agreement to change the commodity and extend the time of payment of a debt, barred by the statute of limitations, and which he is under no obligation to pay, and cannot be compelled to pay, unless he will have the graciousness to admit its existence or promise to pay it in writing. Such benefit as this can scarcely sustain a contract, even under a law which makes no inquiry into the adequacy of a consideration. What prejudice results to the promisee? An agreement to extend the time of payment of a claim which he can never enforce, unless at the pleasure of him to whom the promise is made.

But what occurred in the spring of 1866 can scarcely be dignified into the character of a new contract. It seems rather to be a qualified or conditional promise to pay the existing debt. That it is competent to make such conditional promise, see 3 Parsons on Contracts (5th ed.), page 70, and cases cited.

The condition is that the debt shall be paid in a certain mode and time different from the original undertaking. Now, if these conditions amount to the substitution of a new agreement, it is difficult to conceive of any which would not have that effect. Our conclusion is that the parol promise, so far as it rests upon the obligation to pay in land for the first two years service, is void.

We come now to the consideration of the validity of the promise as resting upon the obligation to pay for the remaining five years service. This service was completed in the fall of 1861, and the subsequent promise or agreement was made in the spring of 1866. It is probable, then, that the claim for all these years, except the last, was barred by the statute at the time this agreement was made. See *Davis* v. *Gorton, adm'r*, 16 N. Y. 255, where this point is directly ruled. If so, all that has been already said applies with respect to the claim for these four years of service. Without determining this question, however, we proceed to discuss the nature and effect of the stipula-

tion then entered into. If the claim was not then barred, the plaintiff had the present right of enforcing it, and of demanding payment in money. But he agreed to extend the time of payment until he should be married. What is the consideration moving to him for this agreement for extension? Plaintiff answers, the agreement of defendant to pay in money. But plaintiff had the same right to exact, and defendant was under the same obligation to make that kind of payment before the agreement as after. There was, therefore, no consideration for the agreement to extend the time of payment; it was not binding upon plaintiff, did not suspend his right of action upon the original obligation, and hence did not prevent the statute of limitations from running against him.

From these views it follows that plaintiff's claim is barred, and that he cannot recover in consequence of what occurred in the spring of 1866.

The substance of the instructions given by the court is, that if the agreement at Hammond's mill was made, as testified to by plaintiff, it constitutes a valid contract upon which plaintiff can recover, and that the statute of limitations did not begin to run until plaintiff was married. In this there is error.

Reversed.