HOLTZLANDER v BROWNELL

Docket No. 105996. Submitted January 4, 1990, at Grand Rapids. Decided March 20, 1990.

Plaintiffs, Zenith and Mary Holtzlander, contracted with defendants, John and Doris Brownell, for the sale of a business known as Zenith Used Cars and Auto Parts. The property conveyed under this contract included seventy-five junk cars used for parts. Defendants thereafter filed for bankruptcy and the business property conveyed in the contract was abandoned by the bankruptcy trustee. Plaintiffs brought an action in the Newaygo Circuit Court to recover the business property. Defendants brought a counter-complaint alleging conversion, breach of contract, and that the contract was void because plaintiffs refused to transfer title to the junk cars conveyed under the contract. Defendants also sought $17,370.54 in wages allegedly earned by John Brownell while employed by plaintiffs from 1976 to June of 1982. Following a bench trial, the trial court, Terrence R. Thomas, J., allowed plaintiffs to recover the vehicles in dispute and awarded defendants $1,500 on their counter-complaint for wages earned after May 5, 1981. Defendants appealed.

The Court of Appeals *held:*

1. There is no basis for the trial court's conclusion that the Michigan Vehicle Code title transfer provisions are inapplicable to inoperable or salvage vehicles.

2. Plaintiffs' failure to properly transfer title in the junk cars to defendants was a breach of plaintiffs' duties under the sale contract. However, defendants received the benefit of their bargain, notwithstanding plaintiffs' failure, and, therefore, the trial court's refusal to grant recision of the sale contract was not error.

3. Defendants failed to preserve for review the issue regarding application of a statute of limitations to bar their claim for

REFERENCES

Am Jur 2d, Insurance §§ 708, 709, 727.

Liability insurance: assault as an "accident," or injuries therefrom as "accidentally" sustained, within coverage clause. 72 ALR3d 1090.

wages earned prior to May 5, 1981, and abandoned their claims regarding the finding of no cause of action on their conversion and breach of contract claims.

Affirmed.

1. AUTOMOBILES — JUNK VEHICLES — TRANSFER OF TITLE.
   The Michigan Vehicle Code's title transfer provisions apply to inoperable or salvage vehicles (MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*).

2. AUTOMOBILES — JUNK VEHICLES — TRANSFER OF TITLE.
   The Michigan Vehicle Code provides for the subsequent transfer of salvage or junk vehicles between dealers; a dealer may sell to another dealer and, if he does, then the salvage certificate of title must be properly assigned to the purchasing dealer (MCL 257.217c[2]; MSA 9.1917[3][2]).

3. CONTRACTS — BREACH OF CONTRACT — RECISION.
   There must be a material breach affecting a substantial or essential part of a contract, in order to warrant recision of the contract; one consideration in determining whether a breach is material is whether the nonbreaching party obtained the benefit which he reasonably expected to receive.

4. APPEAL — PRESERVING QUESTION.
   A party fails to properly present and preserve an issue for review where he fails to provide the Court of Appeals with a transcript of any trial testimony or exhibits pertaining to the issue which may have been presented to the trial court (MCR 7.210[A]).

5. APPEAL — PRESERVING QUESTION.
   A statement of position alone, without an adequate explanation of the basis for the claim or citation of authority, is insufficient to bring an issue before the Court of Appeals.

*Alphonse Lewis, Jr.,* for defendants.

Before: BRENNAN, P.J., and MICHAEL J. KELLY and CYNAR, JJ.

PER CURIAM. On October 27, 1987, following a bench trial, the Newaygo Circuit Court entered judgment allowing plaintiffs Zenith and Mary Holtzlander to recover a number of motor vehicles which had been included in business property

previously sold under contract to defendants John and Doris Brownell. The judgment also awarded $1,500 to defendants on their counter-complaint for overtime wages earned by John Brownell while employed by plaintiffs. Defendants appeal as of right. We affirm.

In June of 1982, the parties contracted for the sale of the business known as Zenith Used Cars and Auto Parts, located in While Cloud, Michigan. When defendants subsequently defaulted on the contract, plaintiffs filed suit in January, 1984, for breach of contract and received a default judgment against defendants.

On November 6, 1984, in settlement of the default judgment, the parties again contracted for the sale of the business. The property conveyed under the contract included seventy-five junk cars used for parts.

In 1985, defendants filed for bankruptcy, and the business property conveyed under the November 6, 1984, contract was abandoned by the bankruptcy trustee.

On October 8, 1986, plaintiffs filed suit to recover the business property, and on May 22, 1987, defendants filed their counter-complaint, dated May 5, 1987. As part of their counter-complaint, defendants claimed that their contract of sale with plaintiffs was void because plaintiffs refused to transfer title to the motor vehicles conveyed under the contract. Further, defendants sought $17,370.54 in regular and overtime wages allegedly earned by defendant John Brownell while employed by plaintiffs from 1976 to June of 1982. Defendants' counter-complaint also alleged claims for conversion and breach of contract.

Defendants argue that the trial court erred in finding, as a matter of law, that the title transfer provisions of the Michigan Vehicle Code, MCL

257.1 *et seq.*; MSA 9.1801 *et seq.*, do not require the signature of the seller and delivery of said title to the buyer at the time of transfer of an inoperable motor vehicle sold for junk and salvage purposes. Defendants contend that the trial court should have rescinded the sale contract and ordered monies paid by defendants under the contract returned to defendants, where plaintiffs failed to properly transfer title in accordance with the code on the seventy-five junk cars used for parts.

MCL 257.233(4); MSA 9.1933(4) of the vehicle code requires:

> The owner shall indorse on the back of the certificate of title an assignment of the title with warranty of title in the form printed on the certificate with a statement of all security interests in the vehicle or in accessories on the vehicle and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle. The certificate shall show the payment or satisfaction of any security interest as shown on the original title.

Failure to comply with the title transfer provisions of § 233 renders the sale of a motor vehicle void. *Bayer v Jackson City Bank & Trust Co,* 335 Mich 99, 105; 55 NW2d 746 (1952); *Whitcraft v Wolfe,* 148 Mich App 40, 50; 384 NW2d 400 (1985), lv den 425 Mich 865 (1986).

With respect to an "owner," as defined under MCL 257.37; MSA 9.1837, who sells a motor vehicle to a "dealer," as defined under MCL 257.11; MSA 9.1811, for junk or salvage, the code provides, *as an alternative,* a more informal method of title transfer, pursuant to MCL 257.242; MSA 9.1942, which provides:

An owner may sell a vehicle to a dealer for salvage by writing on the face of the certificate of title in bold print the word, scrap, along with the signature of the owner or authorized agent, and by then assigning the certificate of title to the dealer purchasing the vehicle. A certificate of title shall not again be issued for the vehicle.

Further, MCL 257.235a; MSA 9.1935(1), as amended by 1980 PA 398, provides:

Notwithstanding any other provision of this act or of Act No. 94 of the Public Acts of 1937, as amended, being sections 205.91 to 205.111 of the Michigan Compiled Laws, a licensed dealer or junk dealer who purchases a vehicle for the purpose of destroying or junking the vehicle may accept a certificate of title which has been assigned to the transferor by a properly indorsed assignment on the back of the certificate of title. The dealer shall write the word "junk" on the face of the certificate of title above the signature of the dealer or an authorized agent of the dealer and forward the certificate to the secretary of state, together with a fee of $4.00 instead of a fee or tax otherwise applicable. This section shall not apply to a transfer unless the fee and certificate of title are received by the secretary of state within 10 days after the date of the vehicle's purchase by the dealer. A certificate of title shall not again be issued for the vehicle.

The code also provides for subsequent transfers of salvage or junk vehicles between dealers, as in this case, pursuant to MCL 257.217c(2); MSA 9.1917(3)(2), which provides in pertinent part:

If a dealer, other than a vehicle scrap metal processor, acquires ownership of a late model vehicle which is a distressed vehicle from an owner and receives an assigned certificate of title, the dealer shall surrender the assigned certificate of

title to the secretary of state and apply for a salvage certificate of title within 5 days after the dealer receives the assigned certificate of title. *The dealer may sell the vehicle to another dealer by assigning the salvage certificate of title to the buyer.*

Given the plain language of the vehicle code, we find no basis for the trial court's conclusion that the code's title transfer provisions are inapplicable to inoperable or salvage vehicles.While the word "may," which is a discretionary word, *Macomb Co Road Comm v Fisher,* 170 Mich App 697, 700; 428 NW2d 744 (1988), is used in the emphasized sentence of § 217(c)(2) above, we construe that sentence to read that a dealer *may* sell to another dealer and, if he or she does, then the salvage certificate of title must be properly assigned to the purchasing dealer. We do not find that a reasonable interpretation of the applicable vehicle code sections would permit a seller of an inoperable motor vehicle to comply or not comply with the code's title transfer provisions at the seller's discretion. Statutes are to be construed so as to avoid absurd or unreasonable consequences. *Joy Management Co v Detroit,* 176 Mich App 722, 731; 440 NW2d 654 (1989), lv den 433 Mich 860 (1989).

Thus, plaintiffs' failure to properly transfer title in the junk cars to defendants was a breach of plaintiffs' duties under the sale contract. However, the agreement was not merely for the purpose of acquiring the junk cars alone. Rather, the agreement was for the transfer of the ongoing business as a whole. In order to warrant recision, there must be a material breach affecting a substantial or essential part of the contract. *Walker & Co v Harrison,* 347 Mich 630, 635; 81 NW2d 352 (1957); *O'Conner v Bamm,* 335 Mich 438, 444; 56 NW2d 250 (1953); *Hisaw v Hayes,* 133 Mich App 639, 642;

350 NW2d 302 (1984). One consideration in determining whether a breach is material is whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive. *Walker & Co, supra.* In this case, all the defendants expected to receive was the use of the junk vehicles for parts in operating the business. We find that defendants received the benefit of their bargain, notwithstanding plaintiffs' failure to properly transfer title to the junk vehicles, and, therefore, the trial court's refusal to grant recision of the sale contract was not error. This Court will not reverse a trial court where it reaches the correct result, albeit for the wrong reason. *People v Beckley,* 161 Mich App 120, 131; 409 NW2d 759 (1987).

Defendants also argue that the trial court erred in finding that the six-year statute of limitations, set forth in MCL 600.5807(8); MSA 27A.5807(8), barred defendants' claim for wages earned by defendant John Brownell while employed by plaintiffs prior to May 5, 1981. Defendants claim that the employment contract which John Brownell entered into with plaintiffs called for continuous service and is, thus, not barred by the statute of limitations until six years after the conclusion of these services. See *Hanover Ins Co v Eleven & One-Half Mile Drainage Dist,* 52 Mich App 658, 662; 218 NW2d 109 (1974). However, defendants have failed to provide this Court with a transcript of any trial testimony or exhibits pertaining to this issue which may have been presented to the court below. As a result, there is no evidence in the record before us establishing the alleged contractual relationship entered into between John Brownell and plaintiffs. Therefore, we can only conclude that defendants have failed to properly present and preserve this issue for review. MCR 7.210(A); *Nye v Gable, Nelson & Murphy,* 169

Mich App 411, 417; 425 NW2d 797 (1988), lv den 432 Mich 889 (1989); *People v Calloway*, 169 Mich App 810, 817; 427 NW2d 194 (1988).

Finally, defendants allege that the trial court erred in finding no cause of action on count III, conversion, and count IV, breach of contract, of their counter-complaint. However, we find that defendants have abandoned those claims on appeal. Defendants have not adequately explained the basis for those claims, nor have they provided our Court with any supporting authority. A mere statement of position is insufficient. *Tringali v Lal*, 164 Mich App 299, 306; 416 NW2d 117 (1987), lv den 430 Mich 889 (1988); *Hull & Smith Horse Vans, Inc v Carras*, 144 Mich App 712, 720; 376 NW2d 392 (1985), lv den 424 Mich 895 (1986), cert den 479 US 822 (1986).

Affirmed.